# United States Court of Appeals
## For the First Circuit

No. 05-2632

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE A. VÁZQUEZ-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Circuit Judge,
Siler,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

Héctor L. Ramos-Vega, Research & Writing Specialist, Federal
Public Defender's Office, with whom Joseph C. Laws, Jr., Federal
Public Defender, were on brief, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Senior
Appellate Attorney, with whom H.S. García, United States Attorney,
and Germán A. Rieckehoff, Assistant United States Attorney, were
on brief, for appellee.

December 12, 2006

[*]  Of the Sixth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**. Jorge A. Vázquez-Rivera ("Vázquez") was convicted of one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. The district court sentenced Vázquez to 210 months in prison. Vázquez appealed, and we remanded his case for re-sentencing in accordance with United States v. Booker, 543 U.S. 220 (2005). United States v. Vázquez-Rivera, 407 F.3d 476 (1st Cir. 2005). On remand, the district court again sentenced Vázquez to 210 months in prison. Vázquez now appeals this sentence. After careful consideration, we affirm.

## I. Background

On June 16, 1999, Vázquez and four other persons were indicted on charges of conspiracy to distribute cocaine. Vázquez voluntarily surrendered to the police on July 28, 1999. All of Vázquez's co-defendants pled guilty pursuant to plea agreements and received sentences ranging from 24 to 120 months in prison. Vázquez contested the charges against him. At trial, various prosecution witnesses testified as to the amounts of cocaine which they had sold or observed being sold to Vázquez. Witnesses also testified as to the presence of weapons at the drug point that Vázquez administered. After a jury trial, Vázquez was convicted on the sole count of conspiracy to distribute cocaine. The court sentenced Vázquez to 210 months in prison based, in part, on the mandatory nature of the Sentencing Guidelines.

Vázquez appealed his conviction and his sentence to this Court. We affirmed Vázquez's conviction, but remanded his case to the district court for resentencing on the ground that his original sentence was pronounced in violation of Booker. Vázquez-Rivera, 407 F.3d 476.

Prior to resentencing, Vázquez submitted a sentencing memorandum to the district court. In the memorandum, he argued that the evidence supported neither the drug quantity that the pre-sentence report attributed to him nor the finding in the pre-sentence report that he could have foreseen the involvement of a weapon in the conspiracy to distribute cocaine. Vázquez also argued that the court should deviate from the Sentencing Guidelines range to reduce sentencing disparities between him and his co-defendants. Lastly, Vázquez suggested that the nature of his offense and his personal characteristics warranted a sentence below the Guidelines range.

The court held a sentencing hearing for Vázquez on September 30, 2005. During the hearing, the court stated:

> We are not in agreement with the grounds put forth whereby we should depart from a Guidelines sentence in this case. Let me state for the record that this court, this Judge, that it will generally heed to the Guidelines in imposing criminal punishment. No doubt some criminal defendants will be disappointed by this result, yet in the long run such an approach may be the best way to develop a fair and consistent sentencing scheme around the country for the benefit of defendants, victims and the public. The

Congressional view of how to structure that sentencing will surely be informed by how judges conform to the new advisory guideline system. If that discretion is exercised responsibly Congress may be inclined to give judges greater flexibility under a new sentencing system. On the other hand if that discretion is abused by sentences that thwart Congressional objectives, Congress has ample reason to deny us that flexibility. The course, in my opinion today, is to faithfully implement the Congressional purposes underlying the sentences format by following the Guidelines in all but unusual cases. I find that this is not an unusual case and that the application of the Guidelines are reasonable in this case.

The court then sentenced Vázquez to 210 months in prison. Vázquez now appeals from this sentence.

## II. Discussion

Vázquez contests his sentence on two grounds. First, Vázquez argues that the evidence at trial was insufficient to support various aspects of his sentence. Second, Vázquez contends that his sentence is procedurally defective because the sentencing court failed to adequately explain his sentence and is substantively unreasonable because the court gave improper weight to the Sentencing Guidelines.

### A. Sufficiency of the Evidence

Vázquez's first argument is that the evidence presented at trial was insufficient to support either the individualized drug quantity or the involvement of weapons that were used to determine

-4-

his sentence.[1]  We review a sentencing court's findings of fact for clear error and their conclusions of law de novo.  United States v. Antonakopoulos, 399 F.3d 68, 82 (1st Cir. 2005).

## 1.  **Drug Quantity**

Vázquez contends that the court erred in calculating the quantity of drugs personally attributable to him for sentencing purposes.  In Derman v. United States, 298 F.3d 34, 43 (1st Cir. 2002), we held that:

> [o]nce the jury has determined that the conspiracy involved a type and quantity of drugs sufficient to justify a sentence above the default statutory maximum and has found a particular defendant guilty of participation in the conspiracy, the judge lawfully may determine the drug quantity attributable to that defendant and sentence him accordingly.

The judge may determine the drug quantity by a preponderance of the evidence.  United States v. Santos, 357 F.3d 136, 140 (1st Cir. 2004).

Vázquez concedes that the sentencing court had the following testimony.  First, Edwin Meléndez-Negrón testified that on "approximately" 20 occasions, he either sold or purchased one kilogram of cocaine to or from Vázquez.  Second, Alberto Negrón-

---

[1]  Vázquez also states that he challenges the sentencing enhancement for his role as supervisor in the drug conspiracy. However, beyond this statement, he provides no additional reasoning or argument why this was error.  As such, we decline to address the argument. United States v. Soto-Beníquez, 356 F.3d 1, 31 (1st Cir. 2003) ("Because this argument is made in a perfunctory manner, unaccompanied by any effort at developed argumentation, it has been waived.").

Constantino testified that he had sold "some kilos" to Vázquez's brother, which were, in fact, destined for Vázquez himself. Third, José Borrero Feliciano testified that the Ceiba drug point, which Vázquez managed, sold "an eighth" of cocaine on a daily basis. Vázquez argues that because some of these witnesses prefaced their calculations with the word "around" or "approximately," their testimony is inherently unreliable. However, we have said previously that a sentencing court need not determine an exact amount of drugs, but may instead make a "reasoned estimate" of the drug quantity attributable to the defendant. United States v. Huddleston, 194 F.3d 214, 224 (1st Cir. 1999). Given this testimony, we conclude that the court had ample evidence on which to base its conclusion that at least five kilograms of cocaine were attributable to Vázquez.

## 2. Weapons in the Conspiracy

Vázquez also argues that the court had insufficient evidence to support the enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a "dangerous weapon (including a firearm)." We have held that a defendant charged with conspiracy is accountable for all "'reasonably foreseeable' conduct undertaken by others" in furtherance of the conspiracy. United States v. Bianco, 922 F.2d 910, 912 (1st Cir. 1991). Thus, to determine whether the sentencing enhancement for possession of a dangerous weapon can be imposed, the sentencing court may consider not only whether Vázquez

-6-

personally possessed a dangerous weapon, but also whether "it was reasonably foreseeable that a co-conspirator would possess a gun in furtherance of the [conspiracy to distribute cocaine]." United States v. Casas, 356 F.3d 104, 129 (1st Cir. 2004).

The sentencing court had the following evidence about the involvement of firearms in the conspiracy. First, Alberto Negrón-Constantino testified that he sold firearms to "Hiram," who was a runner for the drug point managed by Vázquez. Second, Alexander Figueroa testified that he gave a shotgun to the person in charge of storing firearms at the drug point. Third, David Sánchez Ortiz, who sold drugs to Vázquez through his brother, testified that he regularly carried a firearm for protection. Lastly, Edwin Meléndez-Negrón, who purchased cocaine from Vázquez, testified that he also carried a firearm for protection.

We find that this is sufficient evidence to establish the use of firearms to further the conspiracy to distribute cocaine. Further, we believe that the evidence presented is sufficient to allow an inference that Vázquez, who was the manager of the drug point, was likely aware or could have foreseen that many of the people who worked for him carried or used firearms. As we have noted before, "a defendant's awareness of the inner workings of a conspiracy in which he is participating . . . frequently will suffice to prove the defendant's ability to foresee the acts of coconspirators." United States v. LaCroix, 28 F.3d 223, 229 (1st

Cir. 1994). As Vázquez has conceded, testimony at trial showed that Vázquez "allegedly exercised decision making authority to facilitate the delivery of narcotics, was in charge of buying, processing, and distributing the narcotics to the peddlers, and he would be responsible for retrieving the proceeds, verifying the status of the inventory and supervising the day-to-day operation of the drug point." Appellant's Br. 10. Given Vázquez's intimate involvement in the operations of the drug point, the court did not err in concluding that Vázquez could have foreseen that many of his employees and suppliers were armed.

### B. Reasonableness of the Sentence

Next, Vázquez argues that his sentence is procedurally and substantively flawed. He first argues that the sentencing court inadequately explained its justification for his sentence as required by 18 U.S.C. § 3553(c). Vázquez alternatively argues that even if the district court complied with § 3553(c), it gave undue weight to the Sentencing Guidelines in determining his sentence. We review sentences for reasonableness. United States v. Booker, 543 U.S. 220, 260-63 (2005); see also Antonakopoulos, 399 F.3d at 76.

### 1. Justification for the Sentence

Vázquez claims that the court did not adequately explain the reasoning behind his sentence as required by 18 U.S.C. § 3553 (c). We said in United States v. Jiménez-Beltre that "it is

important for us to have the district court's reasons for its sentence"; however, the reasons need not be explicit: "[A] court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did." 440 F.3d 514, 519 (1st Cir. 2006); see also United States v. Navedo-Concepción, 450 F.3d 54, 57 (1st Cir. 2006) ("The more obvious the reasons for a [sentencing] choice, the less that needs to be explained."). Although the court did not specifically reject Vázquez's arguments during the pronouncement of the sentence, it did explain that it had found by a preponderance of the evidence that at least five kilograms of cocaine could be attributed to Vázquez, that a weapon was foreseeable, and that it considered every one of the factors enumerated in § 3553(a) that it is required to consider. The court further stated that it was basing its sentence on the fact that

> [D]efendant was a runner or administrator of a drug point, he had decision making authority to facilitate the delivery of narcotics, was in charge of buying, processing, and distributing drugs at the drug point. He was also responsible for supervising the operations of the drug point. Moreover there were people who participated in this conspiracy that possessed, carried, used and brandished firearms and defendant was aware of the same.

In addition, prior to the pronouncement of sentence, the court specifically stated that it did not agree with Vázquez's disparity argument because plea bargains were "very valuable for

the system."  Given these explanations, we find it easy to infer that the sentencing court did not find Vázquez's arguments regarding sentencing disparities or the sufficiency of the evidence persuasive and that it thought that a sentence based on the Guidelines recommendation was warranted.  Accordingly, we find the sentencing court's reasoning to be sufficient to comply with 18 U.S.C. § 3553(c) and to provide us with a base to analyze Vázquez's other claims.

### C.  <u>Consideration of Sentencing Factors</u>

The crux of Vázquez's argument regarding sentencing is that, had the sentencing court not treated the Sentencing Guidelines as applicable in all but unusual cases, it would have been free to give more weight to other sentencing factors, namely sentencing disparity.  As an initial matter, we think it necessary to point out that the sentencing court misconstrued the role of the Sentencing Guidelines.  As we stated in <u>Jiménez-Beltre</u>, "[a]lthough making the guidelines 'presumptive' or 'per se reasonable' does not make them mandatory, it tends in that direction."  440 F.3d at 518.  By stating that it will "heed" to the Sentencing Guidelines, the sentencing court in the present case appeared to treat the Sentencing Guidelines as presumptively applicable.  By stating that it would apply the Guidelines in all but "unusual cases," the court's language arguably went even further than the language at issue in <u>Navedo-Concepción</u>, 450 F.3d at 57, that we described as a

modest variance from Jiménez-Beltre. Our holding in Jiménez-Beltre makes it clear that a case need not be unusual for a sentencing court to consider the other factors in 18 U.S.C. § 3353(a).

Our review of Vázquez's sentence, however, is for reasonableness. Considering the substantial weight of the Sentencing Guidelines and the § 3553(a) factors, we do not find that his sentence was unreasonable. Vázquez suggests that had the sentencing court not construed the Guidelines as applicable in all but unusual cases, it would have been free to consider his suggestion of a lower sentence to reduce sentencing disparities. Under 18 U.S.C. § 3553(a)(6), the sentencing court is obliged to consider "the need to avoid unwarranted sentence disparities" among similarly situated defendants (emphasis added). Vázquez argues that the sentence he received is unwarranted because it punishes his decision to contest the charges against him rather than enter into a plea bargain.

It is well established that the plea bargaining system does not impermissibly punish a defendant's choice to go to trial rather than to plead guilty: "The legitimacy of the practice of 'plea bargaining,' . . . has not been doubted and where 'properly administered' it is to be 'encouraged' as an 'essential' and 'desirable' 'component of the administration of justice.'" Chaffin v. Stynchcombe, 412 U.S. 17, 31 n.18 (1973) (quoting Santobello v. New York, 404 U.S. 257, 260-61 (1971)). In United States v. Yeje-

-11-

Cabrera, we held that "a defendant simply has no right to a sentence, after trial, that is as lenient as a sentence he could have had earlier in a plea bargain." 430 F.3d 1, 26-27 (1st Cir. 2005); see also United States v. Rodríguez, 162 F.3d 135, 152 (1st Cir. 1998) (stating that plea bargains lead to "sentencing disparity for the defendants who chose to put the government to its burden in proving its case. Nevertheless, the law allows the government to do this, even if it results in sentences of such disparity as would strike many as unfair."). Although a district court may consider disparities among co-defendants in determining a sentence, we do not find Vázquez's sentence to be unreasonable simply because his co-defendants agreed to help the government in exchange for reduced sentences. See United States v. Thurston, 456 F.3d 211, 216-17 (1st Cir. 2006) (noting that a defendant who chooses to enter into a plea bargain is not similarly situated to a defendant who contests the charges); see also Navedo-Concepción, 450 F.3d at 60 ("The district judge was not required to reduce [the appellant's] sentence simply because he--unlike the other defendants--chose to go to trial"). Further, the fact that Vázquez was gainfully employed and is now married, as he notes in his brief on appeal, simply makes his participation in this conspiracy all the more unfortunate; however, this fact does not make his sentence, already at the lower end of the Guidelines range, unreasonable. Thus, given the Sentencing Guidelines

recommendation, to which we attach substantial weight, and the absence of any § 3553(a) factors militating in favor of a lower sentence, we conclude that the sentence that the court imposed on Vázquez was reasonable.

### III.  Conclusion

For the foregoing reasons, we affirm the district court.

**Affirmed**.

**(Concurring opinion follows.)**

**HOWARD, Circuit Judge, concurring in the judgment.** I agree with the lead opinion that the sentence imposed in this case is reasonable. I don't agree that the district judge "misconstrued the role of the Sentencing Guidelines" by stating that it would "heed" to the guidelines in all but "unusual cases." Ante at 10. This formulation is not inconsistent with our recognition in Jiménez-Beltre that the Guidelines are an "important" factor in sentencing and provide the starting point for constructing a reasonable sentence. See 440 F.3d at 518-19; see also 440 F.3d at 522 (Howard J., concurring in part and concurring in the judgment) (the guidelines "in the ususal case" express Congress's view on the purposes of federal sentencing).

District courts will inevitably approach sentencing differently post-Booker. Indeed, the legitimacy of a range of approaches is implicit in Booker's grant of added discretion to sentencing judges. So long as the sentence is reasonable and the approach is not unlawful, the appellate task is complete. See United States v. Buchanan, 449 F.3d 731, 741 (6th Cir. 2006) (Sutton, J., concurring).