# United States Court of Appeals
## For the First Circuit

No. 14-1072

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT ROSSIGNOL,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Kayatta, Circuit Judges.

Mary Davis and Tisdale & Davis, P.A. on brief for appellant.
Thomas E. Delahanty II, United States Attorney, and Renée M. Bunker, Assistant United States Attorney, on brief for appellee.

March 16, 2015

**HOWARD, Circuit Judge**. Defendant-Appellant Robert Rossignol pled guilty to conspiracy to possess with intent to distribute cocaine and to failing to report the importation of more than $10,000 in United States currency. Both charges stemmed from Rossignol's role in an international drug smuggling conspiracy stretching from New Brunswick, Canada to Houston, Texas. The district court imposed a below guidelines sentence of 120 months in prison. On appeal, Rossignol contends that his sentence is substantively unreasonable. We affirm his sentence.

**I.**

Because Rossignol pled guilty, our discussion of the facts is drawn from the change-of-plea colloquy, the Presentence Report (PSR), and the transcript of the sentencing hearing. See United States v. Cintrón-Echautegui, 604 F.3d 1, 2 (1st Cir. 2010).

From at least January 1, 2011 until June 28, 2012, Rossignol was a member of a conspiracy to distribute cocaine that spanned the Canadian-United States border. Because he was a well-known member of the Van Buren, Maine border community, Rossignol was responsible for transporting cash and drugs across the border. A typical transaction in that conspiracy occurred as follows. In Canada, a co-conspirator, "A", would provide Rossignol with considerable amounts of cash. Rossignol would then transport that cash across the border into the United States, delivering it to a third member of the conspiracy. That third person, "B", in turn,

-2-

would transport the money to Texas where he would meet up with "A". "A" would then secure multiple kilograms of cocaine from suppliers in Texas, which "B" would transport by car back to northern Maine. Those drugs were handed off to Rossignol, who resumed his border-crossing role and would drive the drugs into Canada for delivery to "A" or "B". Rossignol was compensated for each successful round of cross-border smuggling.

The last successful trip before Rossignol's arrest took place in February or March of 2012 and involved the transport of eight kilograms of cocaine from Maine into Canada. During the subsequent, stymied trip that led to his arrest, Rossignol entered the United States from Canada at Hamlin, Maine while carrying some $300,000 in United States and Canadian currency, which he failed to report.

Over the course of their investigation, federal agents learned that Rossignol was also involved in the transportation of firearms, providing the basis of a sentencing enhancement the district court later imposed. "A" and "B" purchased several handguns from members of the conspiracy in Texas and transported those guns to Maine. Pursuant to a "side agreement" between Rossignol and "B", Rossignol took those guns into Canada at "B"'s request for an additional $200. Rossignol separately carried another gun into Canada for "A"'s personal use.

-3-

Rossignol was indicted on one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of failing to report the importation of more than $10,000 in United States currency, in violation of 31 U.S.C. §§ 5316(a)(1)(B), 5316(b), and 5322. He pled guilty to both counts. The PSR calculated a guidelines sentencing range of 135 to 168 months, which included a two-level dangerous weapons enhancement under U.S.S.G. § 2D1.1(b)(1). At sentencing, the district court adopted the PSR's guidelines calculation and sentenced Rossignol to 120 months in prison, below the guidelines range.[1] Rossignol timely appealed.

## II.

Rossignol argues that his sentence is unreasonable. Our two-step framework for assessing the reasonableness of a defendant's sentence is well-traveled ground. We first examine whether the district court committed any procedural missteps and, if the sentence is procedurally sound, we then ask whether the sentence is substantively reasonable. See United States v. King, 741 F.3d 305, 307-08 (1st Cir. 2014). The "linchpin" of our substantive reasonableness assessment is determining whether the sentence reflects "a plausible sentencing rationale and a

---

[1] Rossignol's counsel recommended an 84-month sentence, while the government requested a 150-month sentence.

-4-

defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).  We owe "considerable deference" to the district court and our review is limited to determining whether its sentence, "in light of the totality of the circumstances, resides within the expansive universe of reasonable sentences."  King, 741 F.3d at 308.  Overall, we review the district court's "discretionary sentence determinations for abuse of discretion, findings of fact for clear error, and conclusions of law de novo."  United States v. Reverol-Rivera, __ F.3d __, No. 12-1991, 2015 WL 727966, at *2 (1st Cir. Feb. 20, 2015).  Having carefully reviewed the record here, with particular emphasis on the sentencing colloquy, we are unable to conclude that Rossignol's sentence is unreasonable.

Rossignol makes no procedurally-based argument, so we proceed directly to his substantive plaint.[2]  He cites four considerations which, he claims, the district court gave insufficient weight to or ignored altogether.  He contends that the court: (1) ignored his age (61 years), (2) discounted the fact that he had no prior criminal record, (3) gave insufficient weight to the fact that (except for the instant offense) he was an upstanding

---

[2]  Rossignol briefly remarks on appeal that it was "substantively unreasonable" for the district court to apply the dangerous weapons enhancement to him, "who only carried the guns for the owners," and not to "A" and "B", "the actual users of the guns." Rossignol withdrew his initial objection to the enhancement well before sentencing, however, and expressly indicated at the sentencing hearing that he had no objection to the PSR. Accordingly, any procedural argument has been waived. See United States v. Escobar-Figueroa, 454 F.3d 40, 49-50 (1st Cir. 2006).

member of society, and (4) created an unwarranted sentencing disparity by applying the dangerous weapons enhancement to his sentence but not to the sentences of other members of the conspiracy. The record suggests otherwise.

In fact, the record reveals that the court placed particular emphasis on "the history and characteristics of the defendant, the nature and circumstances of the offense, and the need to avoid unwarranted sentencing disparities" -- in other words, the exact factors Rossignol now recites. Far from ignoring them, the sentencing transcript makes plain that the district court specifically considered each of these factors but viewed many as cutting against Rossignol in the context of this drug conspiracy. Most tellingly, the court emphasized:

> . . . [T]his is an unusual situation because of the respect that the defendant had garnered in the Van Buren-Madawaska community. This was not your typical drug smuggler. This was a former police officer; this was a former veteran, member of the United States Army, a man who carried the colors of this country; according to the parish priest, an active church member, somebody who could be counted on to be present at religious services; a coach.
> This is clearly a double-edged sword because although it indicates, as [defense counsel] said, the conduct seems to be aberrational, it's also conduct that is the height of hypocrisy and conduct that as a consequence of the defendant's long-term community involvement provided a cover for his criminal activity. And I agree with [the government] this -- based on this defendant's history and characteristics, he would literally be the last person you would expect

to be smuggling drugs, firearms, and cash across the border.

Beyond this overarching rationale, it is evident that the district court amply considered each particular point the defendant now raises. First, the above demonstrates that the district court identified Rossignol's strong community ties and considerable civic service but, instead of weighing those factors in favor of leniency, viewed them as evidencing a particularly acute breach of the public trust in Rossignol's close-knit border community. This assessment "is grounded on a sensible (though not obligatory) view of the circumstances." Martin, 520 F.3d at 96.

Second, the court likewise invoked Rossignol's stature in the community as one reason he received a longer sentence than several co-conspirators,[3] noting that "the other people involved in this conspiracy . . . would not have been waved through customs like this defendant was." And the record reveals additional reasons why Rossignol's claim that the district court failed to avoid unwarranted sentence disparities among the co-conspirators fails.[4] The court acknowledged that Rossignol received a longer

_____

[3] The court had separately sentenced "B" to 48 months, "A" to 104 months, and another member of the conspiracy, "C", to 120 months.

[4] In any event, the comparison to individual co-defendants is not particularly relevant for purposes of 18 U.S.C. § 3553(a)(6). That section is "primarily concerned with national disparities," although we have considered arguments that "a sentence was substantively unreasonable because of the disparity with the sentence given to a co-defendant." Reverol-Rivera, 2015 WL 727966,

-7-

sentence than three other members of the conspiracy, but noted that he, unlike the others, had not cooperated. As the court explained, the others testified at the trial of a particular co-conspirator which "resulted in a conviction in large part because of their testimony." In light of this critical difference, the district court did not abuse its discretion in giving Rossignol a longer sentence than other members of the conspiracy which included a dangerous weapons enhancement the others did not receive. A defendant's sentence is not "unreasonable simply because his co-defendants agreed to help the government in exchange for reduced sentences." United States v. Vázquez-Rivera, 470 F.3d 443, 449 (1st Cir. 2006).

Third, that Rossignol had no prior criminal history was also acknowledged by the district court. In fact the court based its decision to grant a sentence below the guidelines range -- and well below the government's 150-month recommendation -- on its view that it is "highly unlikely that [the defendant is] going to be doing criminal conduct when [he] get[s] out of prison." At the same time, however, the court referenced a countervailing consideration. Notwithstanding the defendant's limited criminal history, the court explained that this offense was "not a one-off event" and that Rossignol's involvement was "escalating," not "decreasing" as the amounts of cocaine shuttled across the border

at *3.

increased over the course of his involvement.  As the court emphasized, Rossignol smuggled drugs and money "again and again and again," and stopped not "of his own volition," but only when he was caught.

Finally, the district court pointed out that Rossignol's age, among other considerations, made him a "highly unlikely and improbable federal drug trafficking defendant."  We "credit the district court's statement that it considered all of the relevant sentencing factors," including Rossignol's age.  United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011).  Given the importance it placed on the defendant's abuse of his community ties, however, it is understandable that the court did not further discuss this particular consideration.

Ultimately, the district court here concluded that imposing a more lenient sentence "would send a terrible message to the people of the St. John River Valley that if they abuse the trust of their friends and neighbors on both sides of the border, that they'll be treated gently."  In so deciding, it is "readily apparent" that the court elected to focus on certain considerations and "to give less weight to other allegedly mitigating factors"; this is a "choice of emphasis, not a sin of omission," and so is "not a basis for a founded claim of sentencing error."  United States v. Deppe, 509 F.3d 54, 62 (1st Cir. 2007).  The district court took account of each purportedly mitigating factor Rossignol

recites, and its decision is substantively reasonable and amply supported. That the defendant would prefer an alternative weighing of the circumstances does not undermine the district court's sentencing decision.[5] See United States v. Goergen, 683 F.3d 1, 5 (1st Cir. 2012).

## III.

Finding no abuse of discretion, we **affirm** the defendant's sentence.

---

[5] Rossignol also invokes the parsimony principle -- the "statutory directive that sentences should be no higher than necessary to achieve the statutory goals of sentencing." United States v. Turbides-Leonardo, 468 F.3d 34, 41 (1st Cir. 2006); see 18 U.S.C. § 3553(a) (stating that district courts should impose a sentence "sufficient, but not greater than necessary"). This claim is simply an effort to dress up his reasonableness arguments in different clothing. Because we conclude that Rossignol's sentence "falls 'within the expansive universe of reasonable sentences,'" it follows that his sentence "does not offend this principle." United States v. Narváez-Soto, 773 F.3d 282, 289 (1st Cir. 2014) (quoting King, 741 F.3d at 308).