# United States Court of Appeals
## For the First Circuit

No. 03-1504

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ BELTRAN SANTOS A/K/A ARAMIS ESTÉBAN RODRÍGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya, Circuit Judge,

and Stahl, Senior Circuit Judge.

John M. Cicilline for appellant.
Donald C. Lockhart, Assistant United States Attorney, with
whom Craig N. Moore, Acting United States Attorney, and Dulce
Donovan, Assistant United States Attorney, were on brief, for
appellee.

February 12, 2004

**SELYA**, **Circuit Judge**.  In this appeal, defendant-appellant José Beltran Santos, whose true name is Aramis Estéban Rodríguez, asseverates that the district court erred in calculating his guideline sentencing range (GSR) by finding him responsible for an excessive quantity of drugs and mischaracterizing his role in the offenses of conviction.  Discerning no error, we affirm the judgment below.

Because this appeal follows a guilty plea, we draw the facts from the change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing.  See United States v. Tejada-Beltran, 50 F.3d 105, 107 (1st Cir. 1995); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

In the fall of 2001, three malefactors (Moni, Mercedes, and Guillen) attended a series of meetings that culminated in an agreement to purchase thirty-five kilograms of cocaine.  The transaction terms required the purchasers to pay a total of $682,500, with a down payment of $140,000 due at the time of sale and the balance payable over the next five weeks.  Unbeknownst to them, however, this was a sting operation, and the putative sellers were, in reality, two undercover FBI agents and a cooperating individual (CI).

At the final pre-sale meeting, the undercover agents advised the purchasers that if they planned to use a courier, one

-2-

of them would have to accompany the courier to a garage in Cranston, Rhode Island (where the cocaine would be delivered), while the others would wait at a different location with the down payment. With this arrangement in mind, the three purchasers and the appellant traveled to Warwick, Rhode Island, on December 17, 2001, and met with the CI and one of the agents in the parking lot of a Holiday Inn. The record reflects that the appellant had been offered $2,000 (or, perhaps, $2,500 — the difference is inconsequential for present purposes) to act as a courier. Mercedes and Guillen told the agent, in the appellant's presence, that they had brought $140,000 in cash as an initial payment for the thirty-five kilograms of cocaine. Mercedes, Moni, and the money remained at the Holiday Inn with the CI while the agent led Guillen and the appellant to the Cranston garage. During the trip, Guillen told the appellant that he (Guillen) was being paid between $10,000 and $15,000 for his participation in the transaction.

Upon their arrival at the garage, the men were greeted by more undercover agents. On a table inside the garage, fifty kilograms of cocaine were arrayed in plain view. One of the agents asked Guillen and the appellant if they had come to pick up the thirty-five kilograms of cocaine. The appellant responded: "I guess." He and Guillen then attempted to open the "hide" of the

car in which they had arrived, but they were unable to do so.[1] They proceeded to inspect the cocaine. After acknowledging that it was of good quality, they set about preparing it for transport, sprinkling ground coffee onto each one-kilogram package and then rewrapping each package in cellophane. Shortly after this activity began — the parties dispute whether the men were in the process of repackaging the third or fourth kilogram — the agents arrested them.

On December 19, 2001, a federal grand jury sitting in the District of Rhode Island returned a two-count indictment that charged the appellant and his three confederates with conspiracy to distribute in excess of five kilograms of cocaine and attempted possession of that quantity of cocaine with intent to distribute. See 21 U.S.C. §§ 846, 841(a)(1). The appellant initially maintained his innocence. On June 10, 2002, however, he entered a plea of guilty. In connection therewith, he executed a plea agreement, which provided in pertinent part:

> The defendant agrees and understands that the substance involved in this case is powder cocaine. And that the quantity at issue exceeds five kilograms . . . .

For its part, the government agreed to recommend that the court impose the lowest available sentence consistent with the GSR (as

---

[1]The "hide" is apparently a secret compartment in which contraband may be stored.

determined by the court) and any applicable statute imposing a mandatory minimum term of imprisonment.

On March 28, 2003, the district court convened the disposition hearing. The court found the defendant responsible for the full thirty-five kilograms of cocaine. Because the court held the appellant responsible for so much cocaine, his base offense level ordinarily would have been 34 — the base offense level for an individual who is responsible for fifteen to fifty kilograms of cocaine. See USSG §2D1.1(c)(3). But the court thought the appellant deserving of a mitigating role adjustment, and, thus, was required to cap his base offense level at 30. See id. §2D1.1(a)(3).

From this lowered base offense level, the court granted a three-level reduction for acceptance of responsibility, see id. §3E1.1, a two-level "safety valve" reduction, see id. §2D1.1(b)(6), and a two-level mitigating role reduction, see id. §3B1.2(b).[2] Coupled with the absence of any previous criminal history, these determinations yielded a GSR of 46-57 months. See id. ch. 5, pt. A (sentencing table). The court thereupon sentenced the appellant to an incarcerative term of forty-six months. This appeal followed.

---

[2]The sentencing guidelines direct that the mitigating role adjustment then be made from the capped base offense level. USSG §3B1.2, cmt. (n.6). This is a form of "double counting" that the Sentencing Commission has apparently deemed meet.

The appellant advances two assignments of error. First, he asserts that the sentencing court erred in finding him responsible for a drug quantity in excess of 3.5 kilograms of cocaine,[3] arguing that he could not foresee that the transaction would involve so large an amount. Second, he posits that the court should have classified him as a minimal participant rather than a minor participant. We discuss these issues sequentially.

We begin with drug quantity. A district court's factual finding as to the amount of drugs embraced by a conspiracy and reasonably foreseeable by a particular coconspirator will be disturbed on appeal only if it is clearly erroneous. United States v. May, 343 F.3d 1, 6 (1st Cir. 2003); United States v. Garcia, 954 F.2d 12, 16 (1st Cir. 1992). Considering the concession made in the plea agreement and the developments preceding the arrest, the district court hardly can be said to have erred in holding the appellant responsible for more than 3.5 kilograms of cocaine. We explain briefly.

In a drug conspiracy case, "a key datum in constructing the defendant's sentence is the quantity of narcotics attributable

---

[3]Under the sentencing guidelines, drug quantity bears a direct correlation to the GSR (and, therefore, to the length of a defendant's sentence). United States v. Conley, 156 F.3d 78, 84 (1st Cir. 1998). To achieve a base offense level of 30, a defendant must be responsible for more than 3.5 kilograms of cocaine. USSG §2D1.1(c)(5). Because of the "capping" effect of USSG §2D1.1(a)(3), see text supra, amounts above that quantity are irrelevant in this case.

to him for sentencing purposes, a datum initially bounded by the sum of the charged conduct to which the defendant pleads plus his relevant uncharged conduct." United States v. Bradley, 917 F.2d 601, 604 (1st Cir. 1990). Drug quantity is to be derived from all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG §1B1.3(a)(2). The essential inquiry is not what the defendant knew but what acts were reasonably foreseeable by him. See United States v. Colón-Solís, ___ F.3d ___, ___ (1st Cir. 2003) [No. 01-1773, slip op. at 5]; Garcia, 954 F.2d at 15. Thus, each coconspirator is responsible not only for the drugs he actually handled but also for the full amount of drugs that he could reasonably have anticipated would be within the ambit of the conspiracy. See USSG §1B1.3(a)(1)(B), cmt. (n.2); see also United States v. Sepulveda, 15 F.3d 1161, 1197 (1st Cir. 1992).

The appellant argues that the sentencing court erred in its drug-quantity determination because he agreed to act as a courier without any inkling of how much cocaine his principals were buying. This argument lacks force.

In terms of the legal landscape, the appellant's challenge must take root in inhospitable soil. Four points come readily to mind. First, a sentencing court need only support a drug-quantity determination by a preponderance of the evidence. Sepulveda, 15 F.3d at 1198. Second, such a determination need not

be exact, but, rather, may be approximate, as long as the approximation represents a reasoned estimate. United States v. Rodriguez, 162 F.3d 135, 149 (1st Cir. 1998). Third, the sentencing court's drug-quantity determination can be set aside only if it is clearly erroneous. United States v. Sklar, 920 F.2d 107, 110-11 (1st Cir. 1990). Fourth, if there are two plausible views of the record, the sentencing court's choice between them cannot be clearly erroneous. United States v. Cruz, 120 F.3d 1, 4 (1st Cir. 1997) (en banc).

Silhouetted against this landscape, the record provides adequate support for a finding that the appellant reasonably could have foreseen that the amount of cocaine involved in the deal would exceed 3.5 kilograms. After all, the appellant had pleaded guilty to conspiring and attempting to possess in excess of five kilograms of cocaine, and the sentencing court — which expressly found that there was a sound factual basis for the plea — was entitled to accept that concession at face value and to draw reasonable inferences from it. See, e.g., United States v. Marrero-Rivera, 124 F.3d 342, 353-54 (1st Cir. 1997). Moreover, the fact that the appellant was going to be paid a minimum of $2,000 for his relatively brief involvement in picking up and transporting the contraband plainly indicated that this was not a penny-ante

transaction.[4]   Then, too, the appellant was present during a discussion outside the Holiday Inn at which Mercedes and Guillen mentioned both the quantity to be purchased (thirty-five kilograms) and the size of the down payment ($140,000), and he saw an enormous amount of cocaine displayed on a table when he first entered the garage.   We previously have warned that "[a] defendant who conspires to transport for distribution a large quantity of drugs, but happens not to know the precise amount, pretty much takes his chances that the amount actually involved will be quite large." United States v. De La Cruz, 996 F.2d 1307, 1314 (1st Cir. 1993). That comment is apposite here.

The appellant argues that there is countervailing evidence, for example, that he was not present during any of the pre-sale negotiations and that, when asked if he had come to pick up thirty-five kilograms, he responded with an enigmatic "I guess." But the facts to which he clings do not lead inescapably — or even logically — to the conclusion that he foresaw a cache of less than 3.5 kilograms.   The most that can be said for his position is that there are two plausible views of the record, and the sentencing court therefore was free to adopt the one that it thought correct. See Cruz, 120 F.3d at 4.

_____

[4]To reinforce this point, the appellant learned, while en route to the Cranston garage, that Guillen was to receive between $10,000 and $15,000 for his participation.

This brings us to the appellant's argument that he should have been classified as a minimal participant in the offenses of conviction (and, thus, should have received a four-level reduction under USSG §3B1.2(a)). The lower court rejected this argument, and so do we.

Because the sentencing court's determination of a defendant's role in the offense is necessarily fact-specific, appellate review of such a determination must be conducted deferentially. See United States v. Ortiz-Santiago, 211 F.3d 146, 148-49 (1st Cir. 2000); Cruz, 120 F.3d at 3. The standard of review is for clear error. Dietz, 950 F.2d at 52. So long as the district court's decision is based on reasonable inferences drawn from adequately supported facts, we cannot find it to be clearly erroneous. United States v. Rosado-Sierra, 938 F.2d 1, 2 (1st Cir. 1991). It follows logically that in the absence of a mistake of law — and we descry none here — "battles over a defendant's status . . . will almost always be won or lost in the district court." United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995).

The sentencing guidelines afford two possible adjustments for a defendant whose part in the offense of conviction dilutes his culpability: a two-level adjustment for minor participation and a somewhat more generous four-level adjustment for minimal participation. See USSG §3B1.2. The difference between a minimal and a minor participant is a difference of degree, not kind.

-10-

United States v. Sanchez, ___ F.3d ___, ___ n.2 (1st Cir. 2004) [No. 02-2504, slip op. at 7 n.2].

To qualify as a minor participant, a defendant must prove that he is both less culpable than his cohorts in the particular criminal endeavor and less culpable than the majority of those within the universe of persons participating in similar crimes. Id. at ___ [slip op. at 7]; United States v. Teeter, 257 F.3d 14, 30-31 (1st Cir. 2001). To qualify as a minimal participant, a defendant must prove that he is among the least culpable of those involved in the criminal activity. In our view, this entails proof that he is substantially less culpable than his cohorts in the actual offense and that he is substantially less culpable than the vast majority of those taking part in similar crimes. See USSG §3B1.2, cmt. (nn.3(A), 4, 5); see also United States v. Kerr, 13 F.3d 203, 206 (7th Cir. 1993) (refusing reduction for minimal participation where defendant did not prove that she was substantially less culpable than the average participant in similar crimes); De La Cruz, 996 F.2d at 1314 (giving as examples of a minimal participant "someone who played no other role in a very large smuggling operation than to offload part of a single marijuana shipment" or someone who "was recruited as a courier for a single smuggling operation involving a small amount of drugs") (quoting USSG §3B1.2 cmt. (n.2)). In short, a defendant must be a

-11-

plainly peripheral player to justify his classification as a minimal participant.

This standard is hard to meet and, accordingly, it will be the rare case in which a defendant will warrant designation as a minimal participant. See USSG §3B1.2, cmt. (n.4). That is especially so since a defendant who seeks a downward role adjustment bears the burden of proof on that issue. United States v. Ocasio, 914 F.2d 330, 332-33 (1st Cir. 1990).

With this framework in mind we return to the instant case. At the disposition hearing, the appellant argued that his role was minimal because he was to act only as a courier and lacked an understanding of the scope of the criminal enterprise. He makes essentially the same argument on appeal, insisting that such things as his somewhat equivocal answer when asked if he was at the garage to pick up the thirty-five kilograms of cocaine, his absence during the pre-sale negotiations, his method of compensation (he was to be paid a flat fee, not a share of the anticipated profits), and his inability to open the vehicle's "hide" indicate how far removed he was from the protagonists.

To be sure, all of these things count in the appellant's favor — but they tell only a part of the story. For one thing, the appellant's argument overlooks that the quantity of drugs involved in this transaction was very large — and the appellant should have known as much. That fact militates against a finding that his role

-12-

was minimal.  See, e.g., United States v. Rodriguez Cortes, 949 F.2d 532, 547 (1st Cir. 1991) (holding that "twenty-six kilos of cocaine is clearly not the small amount of drugs contemplated in the guidelines" for minimal participation).  For another thing, the record contains evidence that the appellant did more than merely serve as a courier:  for example, he inspected the cocaine for quality and assisted in repackaging it for transportation.

The sockdolager is that even those who serve purely and simply as drug couriers are not automatically guaranteed mitigating role reductions.  See, e.g., United States v. Lopez-Gil, 965 F.2d 1124, 1131 (1st Cir. 1992) (upholding the denial of a two-level "minor participant" credit to a drug courier); United States v. Paz Uribe, 891 F.2d 396, 399 (1st Cir. 1989) (same).  If drug couriers cannot lay claim as of right to minor participant status, the assertion that every drug courier is entitled to a four-level reduction for minimal participation is obviously untenable.

In this case, the sentencing court carefully appraised the appellant's involvement and acknowledged that he was the least culpable of the four coconspirators.  The court determined, however, that he properly should be classified as a minor, not a minimal, participant.  Under the circumstances, the court's recension of the evidence seems entirely plausible.  Thus, we cannot say that its conclusion was clearly erroneous.

We need go no further.  For the reasons elucidated above, we uphold the appellant's sentence.


**<u>Affirmed</u>**.