[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 27, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12341
Non-Argument Calendar

_____

D. C. Docket No. 05-00009-CR-T-23-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUILLERMO RAMIREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 27, 2007)**

Before BIRCH, BLACK and WILSON, Circuit Judges.

PER CURIAM:

Guillermo Ramirez ("Ramirez") appeals his 188-month sentence for

conspiring to distribute and possess with the intent to distribute methamphetamine

from approximately August 6, 2004 through December 7, 2004, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii), and distributing and possessing with the intent to distribute methamphetamine on August 20, 2004 and October 13, 2004, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) and 18 U.S.C. § 2. Ramirez argues that the district court (1) clearly erred by holding him accountable for transactions that occurred on November 23, 2004 and December 7, 2004 in calculating drug quantity; (2) clearly erred by not granting him a minor-role reduction under U.S.S.G. § 3B1.2; and (3) imposed an unreasonable sentence. Because we find no error in the district court's rulings, and find the sentence reasonable, we affirm.

## Background

In July 2004, the United States Drug Enforcement Administration and the Hillsborough County Sheriff's Office ("HCSO") began a joint investigation of the methamphetamine trafficking activities of Francisco Vargas ("Vargas"), who is Ramirez's brother-in-law. Luis Argote ("Argote"), an HCSO detective, posed as a buyer. Over the course of the next few months, Argote met with Vargas and Ramirez on several occasions and discussed purchasing quantities of methamphetamine. Ramirez and/or Vargas actually delivered to Argote quantities of methamphetamine and methamphetamine ice on multiple occasions and

discussed the possible purchase of a pound of methamphetamine ice, although that transaction never took place. On December 7, 2004, Ramirez and Vargas were arrested during a meeting with Argote where they agreed to procure a pound of methamphetamine ice with $10,000 paid up front.

**Discussion**

*1.      Drug-Quantity Calculation*

In calculating Ramirez's sentence, the district court held him accountable for 43.22 grams of methamphetamine "actual" and 564.41 grams of "ice." Ramirez contends that he should not be held accountable for the quantity of drugs from the November 23 transaction because he was not present at the transaction and because, in general, he had relatively little interaction with the drug buyer, Argote, leading up to that transaction. Ramirez also notes that Argote testified that he had no conversations with Ramirez about the November 23 transaction. In addition, Ramirez argues that the quantity of drugs discussed at the December 7 meeting should not be attributed to him because he and Vargas stated that they could not deliver the amount of drugs that Argote requested. He argues that they never intended to provide a pound of methamphetamine ice to Argote.

We review the district court's determination of the quantity of drugs attributable to a defendant for clear error. *United States v. Ryan*, 289 F.3d 1339,

1347-48 (11th Cir. 2002) (per curiam). The government must establish the drug quantity by a preponderance of the evidence when a defendant objects. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005)

"Section 2D1.1 of the guidelines provides that the base offense level for a possession or a conspiracy drug offense is ordinarily calculated by determining the quantity of drugs attributable to a defendant." *Id*. Section 1B1.3(a)(1)(A) of the Sentencing Guidelines requires a district court to consider as relevant "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." Where a criminal enterprise is taken in concert with others, "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" must be considered. U.S.S.G. § 1B1.3(a)(1)(B). "In an offense involving an agreement to sell a controlled substance, the *agreed-upon quantity* of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense." U.S.S.G. § 2D1.1 cmt. n.12 (emphasis added). Commentary to the Sentencing Guides also provides:

> If . . . the defendant establishes that [he] did not intend to provide . . . , or was not reasonably capable of providing . . . , the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that the defendant did not intend to provide . . . or was not reasonably capable of providing . . . .

4

*Id.*

We can not say that the district court clearly erred in finding that the quantity of drugs from the November 23 and December 7 transactions were attributable to Ramirez. Ramirez had established himself as a key member of the conspiracy by the time of the challenged transactions. There was ample evidence that he both knew about and acted to further the November 23 and December 7 transactions. Therefore, those transactions are relevant conduct that may properly be attributed to Ramirez. *See* U.S.S.G. § 1B1.3(a)(1)(A).

Furthermore, although the transcript of the district court's comments regarding the December 7 transaction are not entirely clear, the evidence supports the court's conclusion that Ramirez was accountable for the quantity of "ice" the parties agreed to sell to Argote. The evidence indicates that Ramirez and Vargas agreed to provide a pound of methamphetamine ice. The meeting did not result in a drug sale because the drug buyer was not willing to pay the entire amount in advance; not because the conspirators lacked the intent or ability to provide the drugs. Accordingly, we affirm the district court's findings as to drug quantity for sentencing purposes.

2. *Minor-Role Reduction*

Ramirez argues that the district court should have granted him a minor-role

reduction, under U.S.S.G. § 3B1.2, because he was not paid any money for his involvement in the conspiracy and he did not have any proprietary interest in the drugs. Ramirez asserts that his interest was merely in helping Vargas, who was his brother-in-law. In addition, Ramirez asserts that Vargas was the primary actor in all of the drug transactions.

We review a sentencing court's determination of a minor-role reduction for clear error. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The defendant bears the burden of proving his minor role by a preponderance of the evidence. *Id.* at 939. Under the Guidelines, a defendant may receive a two-level reduction in his base offense level if his role in the offense was minor. U.S.S.G. § 3B1.2(b). A "minor participant" is someone who is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.5. Commentary to § 3B1.2 provides that a defendant, who (1) has been held accountable only for the relevant conduct in which he personally was involved, and (2) played a limited role in the criminal activity, is not automatically precluded from minor-role consideration. U.S.S.G. § 3B1.2 cmt. n.3(A).

We have held that, when determining a defendant's entitlement to a minor-role reduction, the district court should consider (1) the defendant's role in the

6

relevant conduct, and (2) his role as compared to that of other participants. *De Varon*, 175 F.3d at 940. However, "a district court is not required to make any specific findings other than the ultimate determination of the defendant's role in the offense." *Id.* Regarding relevant conduct, "the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." *Id.* at 941. Regarding other participants, we have held that the district court (1) "should look to other participants only to the extent that they are identifiable or discernable from the evidence. . . [and (2)] may consider only those participants who were involved in the relevant conduct attributed to the defendant." *Id.* at 944. However, "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." *Id.* In addition, we have indicated in the drug courier context that the amount of money an individual is being paid for their participation is relevant to determining whether they had a minor role. *Id.* at 945.

There was substantial evidence that Ramirez had a significant role in the enterprise. In particular, Ramirez discussed what code words would be used when the buyer made purchase requests; negotiated the payment that would be made for

the drugs; received many of the buyer's telephone calls requesting drugs; stated that he was going to pick up the drugs from their supplier; and indicated that if his co-conspirator did not get the drugs for the buyer, then he would get them. Ramirez's apparent lack of compensation for his role is overwhelmed by all of the other evidence showing the significance of his role. Furthermore, the fact that Ramirez was not the most central figure in the conspiracy does not make his role minor because he was significantly involved in many critical aspects of the conspiracy. *See De Varon*, 175 F.3d at 944. Therefore, based on this evidence, it was not clear error for the district court not to grant Ramirez a minor-role reduction.

*3.     Reasonableness of Sentence*

Ramirez argues that his sentence is unreasonable based on his role in the conspiracy, his personal characteristics, and a disparity between his sentence and Vargas's sentence. We review the district court's sentence for reasonableness. *United States v. Winingear*, 422 F.3d 1241, 1244-45 (11th Cir. 2005) (per curiam). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable . . . ." *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). Post-*Booker*, we have established a two-part process for district courts to use in calculating sentences. *Id.* at 786. First, the district court

8

must consult and correctly calculate the range recommended by the Sentencing Guidelines. *Id.* Second, the district court must fashion a reasonable sentence by considering the factors enumerated in 18 U.S.C. § 3553(a). *Id.* Though *Booker* has rendered the Sentencing Guidelines merely advisory, the standards utilized to review the application of the Guidelines remain the same. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005).

Included among the § 3553(a) factors are (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for deterrence; (5) the need to protect the public; (6) the sentencing guidelines range. In particular, § 3553(a)(6) directs the courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The district court does not need to state on the record that it has considered each of he § 3553(a) factors. *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005).

"The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006), *pet. for cert. filed*, (U.S. Oct. 14, 2006) (No. 06-7352). A reviewing court will not substitute its judgment in weighing the relevant

9

factors. *Id.* Moreover, we have rejected the notion that a sentence within the guidelines is *per se* reasonable. *Talley*, 431 F.3d at 787. Even so, "there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." *Id.* at 788.

In arguing that his sentence is unreasonable, Ramirez points to his demonstrated devotion to his family, work history, and lack of a criminal history. Further, Ramirez indicates that he was not paid for his participation, that he never meant to get involved with drugs, and has asked for forgiveness. Ramirez also claims that there is an unwarranted sentencing disparity between his 188-month sentence and the 87-month sentence Vargas received in light of Vargas's central role in the enterprise and Ramirez's peripheral role.

The sentencing judge acknowledged many of the factors Ramirez notes and assigned Ramirez a sentence at the bottom of the guidelines imprisonment range. Furthermore, these factors alone do not dictate that a sentence at the bottom of the guidelines range is out of the "range of reasonable sentences from which the district court may choose." *See Talley*, 431 F.3d at 788.

The sentences received by Ramirez and Vargas were not unwarrantedly disparate because, while Ramirez and Vargas were convicted for their involvement

10

in the same conspiracy, the record shows that Vargas pled guilty and received a U.S.S.G. § 5K1.1 substantial assistance departure. Therefore, there was reason for the sentencing disparity between Ramirez and his co-conspirator. Accordingly, the sentencing disparity was not unwarranted and we affirm Ramirez's sentence.

**AFFIRMED.**