LYNCH, Circuit Judge,
dissenting as to the remand.
In 1995, defendant Ernesto Cirilo-Mu-ñoz was convicted of aiding and abetting the murder of an on-duty police officer during the commission of a drug offense. Cirilo drove the getaway car for his co-defendants, who murdered Ivan Mejias Hernandez, an undercover police officer posing as a drug customer. Cirilo was sentenced to twenty-seven years in prison. The murderer cooperated with the government and received a twenty-two year sentence, seventeen of which were for this murder.
Cirilo now appeals his sentence on four grounds. I state my views on each.
I.
More detailed descriptions of the facts may be found in our previous opinions pertaining to Cirilo’s conviction and initial sentence. See Cirilo-Muñoz v. United States, 404 F.3d 527, 528-29 (1st Cir.2005); United States v. Mangual-Corchado, 139 F.3d 34, 37-41 (1st Cir.1998). My view of what the record establishes varies a bit from that of my colleagues.
Saul Mangual Corchado, Jose Lugo Sanchez, and David Silva sold drugs, including marijuana, cocaine, and heroin, at a drug point outside Cafetín El Ideal in Trujillo Alto, Puerto Rico. Cirilo frequented El Ideal, and El Ideal’s owner testified that he was “almost always” with Mangual and Lugo. There was no evidence that Cirilo himself sold drugs.
Lugo correctly suspected that Mejias, who was a regular drug customer, was an undercover police officer. Lugo told one of his suppliers — a man known as “Chis-po” — as much, and in October 1994, Chispo ordered Lugo to kill Mejias. Lugo then told Luis Antonio Ramirez Ynoa that Chis-po had ordered Lugo to kill Mejias. Lugo *137 testified at trial that he did not tell Cirilo of the order.
In the early afternoon of November 1, 1994, Lugo, Silva, Ramirez, Mejias, and Cirilo, among others, were present at the El Ideal drug point. Lugo walked with Mejias to the stoop of a nearby building, where he accused Mejias of being an informant. Silva and Ramirez then approached the stoop, and Lugo went to retrieve a revolver from a car parked in front of El Ideal. Lugo concealed the gun, and upon walking back towards El Ideal, Lugo encountered Mangual, Cirilo, and Yito Morales (another drug supplier), all of whom he encouraged to beat up Mejias. Mangual, Cirilo, and Morales declined, and Lugo then returned to the stoop, where he had left Ramirez, Silva, and Mejias. The evidence was unclear as to whether Cirilo accompanied Lugo to the stoop.
Once back at the stoop, Lugo ordered Mejias at gunpoint to surrender the keys to his car, a Suzuki parked in front of El Ideal. Ramirez and Mangual retrieved Mejias’s gun from his car while Cirilo looked on from a vantage point near the car. Lugo then escorted Mejias back to the Suzuki, where Mejias retrieved his keys, and Lugo instructed Mejias to get in the Suzuki and “not ... come around there anymore.” However, as Mejias was about to leave, another man, identified as “Papilin,” told Lugo that he had to kill Mejias or otherwise Mejias might come back. There was no direct evidence that Cirilo heard this comment, and the evidence as to where Cirilo was standing in relation to Papilin and Lugo was unclear.
At that point, Lugo ordered Mejias, again at gunpoint, to get out of the driver’s seat and into the back seat of the Suzuki. Lugo got in the back seat with Mejias, and Mangual got into the driver’s seat. Mangual then drove out of the parking lot and on to the highway. Cirilo and Ramirez followed in another car. Shortly after leaving El Ideal, Lugo shot Mejias in the abdomen and in the head. Thereafter, the cars stopped at a cemetery, where Ramirez shot Mejias twice more in the head and then got into the passenger seat of the Suzuki. Lugo got into the other car with Cirilo, and both cars traveled to a quarry, where Mangual and Ramirez attempted to push the Suzuki, containing Mejias’s body, into the quarry. The car became suspended, and the four men left the quarry in the car driven by Cirilo. Later, they split $240 that Lugo had taken from Mejias’s body.
Mangual, Ramirez, Lugo, and Cirilo were later arrested and indicted for aiding and abetting the murder of an on-duty police officer in relation to a felony drug offense, 21 U.S.C. § 848(e)(1)(B); 18 U.S.C. § 2, carjacking, 18 U.S.C. § 2119, and using a firearm during the commission of a crime of violence, namely the carjacking, id. § 924(c). Lugo entered into a plea agreement with the government and testified against Mangual, Ramirez, and Cirilo at trial. In September 1995, Cirilo was convicted of aiding and abetting the Mejias murder, but acquitted of the carjacking and firearms charges.[97] He was sentenced to life in prison.
Cirilo appealed his conviction, arguing that the evidence was insufficient to establish the aiding and abetting offense, and the conviction was affirmed. Mangual-Corchado, 139 F.3d at 44-49. His petition for certiorari was denied. Cirilo-Munoz v. United States, 525 U.S. 942, 119 S.Ct. 363, 142 L.Ed.2d 300 (1998).
*138 Cirilo then filed a petition for post-conviction relief under 28 U.S.C. § 2255. One of the issues raised in the petition involved the district court’s application of a sentencing enhancement based on its finding that Mejias’s murder was motivated by the fact that he was a police officer. Cirilo’s counsel had failed to challenge the application of this enhancement on direct appeal, despite the fact that it increased Cirilo’s Guidelines range from 27-34 years to life imprisonment. The district court denied the § 2255 petition, but on appeal this court held that Cirilo’s counsel had been constitutionally ineffective in failing to raise the issue. Cirilo-Muñoz, 404 F.3d at 531-32. We vacated Cirilo’s sentence and remanded the case to the district court for re-sentencing. Id. at 532.
On remand, with Booker in mind, the district court first calculated the range of sentences recommended under the Guidelines, taking into account a two-level reduction for Cirilo’s minor role. The judge concluded that a sentence within that range was reasonable, noting that he had considered the factors listed in 18 U.S.C. § 3553 and discussing specifically the seriousness of the crime as well as Cirilo’s good behavior in prison and his repentance. In response to arguments raised by Cirilo and repeated here, the judge pointed out that the thinness of evidence against Cirilo did not change the fact that he had been convicted of aiding and abetting, and he explained that Lugo’s more lenient sentence resulted from his plea agreement and cooperation with the government. Although the government had recommended a sentence of 360 months, the judge sentenced Cirilo to 324 months (twenty-seven years) of imprisonment, the lowest sentence under the Guidelines, in addition to four years of supervised release and a special monetary assessment of $50.00.
II.
On appeal, Cirilo raises four claims of error. He first claims that there was a Guidelines error. Cirilo argues that the district court should have reduced his base offense level by four levels, rather than by two, because he played only a minimal role in the offense and was not a minor participant, as the court found. See U.S.S.G. § 3B1.2. Second, Cirilo argues that he was sentenced for a crime of which he was innocent, and, despite his conviction, that this violated his Eighth Amendment right against cruel and unusual punishment. Third, Cirilo argues that his sentence is unreasonable merely because it is disproportionate to the sentence received by Lugo, who shot Mejias. Finally, Cirilo argues that the district court failed to explain adequately how it arrived at his sentence. See United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir.2006) (en banc), cert. denied, — U.S. -, 127 S.Ct. 928, 166 L.Ed.2d 715 (2007). All four arguments are without merit.
A. Claimed Guidelines Error
At Cirilo’s re-sentencing hearing, the district court determined that Cirilo had played a minor role in the offense and accordingly was entitled to a two-level reduction in his base offense level. See U.S.S.G. § 3B1.2(b). Cirilo argues that this was not enough: the district court should instead have reduced his base offense level by four levels because the evidence showed that he was only a minimal participant in the offense.[98] See id. *139 § 3B1.2(a). The claimed error is not purely one of law, but of the district court’s application of the law to the facts. We review the district court’s factbound determination for clear error. United States v. Downs-Moses, 329 F.3d 253, 266 (1st Cir.2003); United States v. Wright, 873 F.2d 437, 443-44 (1st Cir.1989). As long as the district court’s determination is based on reasonable inferences drawn from adequately supported facts, this court will not find clear error. United States v. Santos, 357 F.3d 136, 142 (1st Cir.2004).
The Sentencing Guidelines provide for offense-level adjustments for a defendant whose degree of participation in the offense lessens his culpability. A minor participant may be awarded a two-level reduction of his base offense level, while a minimal participant may be awarded a four-level reduction.[99] U.S.S.G. § 3B1.2. “The difference between a minimal and a minor participant is a difference of degree, not kind.” Santos, 357 F.3d at 142.
To qualify as a minor participant, a defendant must demonstrate that he is less culpable than those with whom he acted and less culpable than the majority of those who participate in similar crimes. Id. To qualify as a minimal participant, a defendant must show that “he is substantially less culpable than his cohorts in the actual offense and that he is substantially less culpable than the vast majority of those taking part in similar crimes. In short, a defendant must be a plainly peripheral player to justify his classification as a minimal participant.” Id. (citation omitted). A lack of knowledge or understanding of the extent of a criminal enterprise or the activities of others indicates minimal participation. U.S.S.G. § 3B1.2 cmt. n. 4.
Still, being the least culpable defendant in a criminal conspiracy does not automatically make one a minimal participant: rather, the minimal participant designation is reserved for the rare case. Id.; see also, e.g., Santos, 357 F.3d at 142 (minimal participant standard so hard to meet that it will apply only rarely); Downs-Moses, 329 F.3d at 266 (similar); United States v. Munoz, 36 F.3d 1229, 1238 (1st Cir.1994) (similar); United States v. Jurado-Lopez, 338 F.Supp.2d 246, 252 (D.Mass.2004) (refusing to grant minimal role adjustment to woman threatened and physically forced into being a drug mule, given that the minimal role adjustment is meant to be used infrequently). Further, if Cirilo were considered a minimal participant, his twenty-seven-year sentence would still fall within the applicable Guidelines range.
Cirilo argues primarily that he was a minimal participant because he lacked knowledge of the scope of the criminal enterprise — that is, he claims that he was unaware that Lugo intended to kill Mejias. That argument is foreclosed by the jury *140 verdict, which required a finding of foreknowledge. United States v. Rostoff, 53 F.3d 398, 413 (1st Cir.1995) (judge cannot sentence defendants based on determinations that contradict facts implicit in jury verdict); United States v. Weston, 960 F.2d 212, 218 (1st Cir.1992), abrogated on other grounds by Stinson v. United States, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (“[A] guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict.”).
This court upheld that verdict, affirming the jury’s finding that Cirilo shared Lugo’s intent to kill Mejias. See Mangual-Corchado, 139 F.3d at 44-49. We cannot reconsider here whether Cirilo had knowledge of the extent of the criminal enterprise.[100]
The district court did not clearly err in its determination that Cirilo was a minor, but not a minimal, participant. At the initial sentencing hearing, the court canvassed the evidence in the case and noted that the evidence indicated, inter alia, that Cirilo was aware of the plan to kill Mejias, that he drove Lugo to the quarry and drove his co-defendants away from the quarry after the car had been pushed over the embankment, and that he shared in the money that was taken off of Mejias’s body. The district court then explained its reasons for finding that Cirilo was a minor participant in the offense. The court stated, “[Bjecause he didn’t kill the victim, because he didn’t try to dump the car into the ... embankment and ... he was ... driving the getaway car, he stayed behind, I’m going to give him a minor participant, but I’m not going to give him a minimal because he doesn’t qualify as a minimal.”
At re-sentencing, Cirilo’s counsel asked the court to reconsider Cirilo’s role based on his supposed lack of knowledge. After hearing counsel’s argument, the court again determined that Cirilo was a minor participant entitled to a two-level reduction. The court did not at re-sentencing reiterate its earlier given reasons for applying the minor participant reduction, nor did it need to do so. Cf. Jiménez-Beltre, 440 F.3d at 519 (“[A] court’s reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did.”).
Based on the record, there is no clear error in the denial of a minimal participant reduction. Even viewing Cirilo’s argument for a reduction as going beyond the issue of his knowledge, the argument still fails. The record shows that Cirilo drove the car that allowed the other participants in the crime to make a clean getaway. It is not clear error to infer that Cirilo’s co-defendants would not have driven out to the quarry to dispose of Mejias’s body and car if they had not known that they had a means by which to leave the scene. It was not clear error to conclude that Lugo and Ramirez valued Cirilo’s participation significantly. When they lost sight of Cirilo’s car behind them, they doubled back along the road until they came upon him, at which point the cars continued on togeth *141 er. Likewise, the evidence was that Cirilo shared equally in the proceeds of the murder. The district court’s determination that Cirilo was not merely a peripheral player was not clearly erroneous.
B. Excessive Punishment
Cirilo argues that he is innocent, and that as a result his sentence violates the Eighth Amendment’s prohibition on cruel and unusual punishment.
We have already rejected the claim of innocence. Mangual-Corchado, 139 F.3d at 49. Nonetheless, we discuss Cirilo’s two claims of error because they independently are based on flawed legal premises. Cirilo first argues that he did not aid and abet in Mejias’s killing in connection with a felony violation of Title II or III of the Controlled Substances Act, Pub.L. No. 91-513, 84 Stat. 1242 (1970), as required by 21 U.S.C. § 848(e)(1)(B). In support of this argument, Cirilo notes that he was acquitted of both the carjacking and firearms offenses with which he was charged. Second, Cirilo argues that he was not engaged in any continuing criminal enterprise, and that such engagement is required for conviction under 21 U.S.C. § 848. Cirilo bases this argument on the fact that the title of § 848 is “Continuing Criminal Enterprise.”
Both strands of Cirilo’s argument are flawed. To begin, § 848(e)(1)(B) does not require the principal to have been engaged in a continuing criminal enterprise. Rather, § 848(e)(1)(B) defines a separate crime — the killing of a law enforcement officer in relation to felony violation of federal drug laws — from that established in § 848(a)-(c). See United States v. NJB, 104 F.3d 630, 633-35 (4th Cir.1997); United States v. Villarreal, 963 F.2d 725, 727-28 (5th Cir.1992) (“[Section] 848(e) ... added a death penalty provision, not for CCE offenses, but for an entirely new group of offenses — intentional murders committed during certain specified felonies.” (emphasis added)). Likewise, the carjacking crimes to which Cirilo refers are irrelevant to conviction under § 848(e)(1)(B), which criminalizes the killing of a law enforcement officer in connection with certain specified narcotics felonies.
As to Cirilo’s first argument, there was ample evidence that the killing of Mejias was in relation to the violation of federal narcotics laws. Lugo suspected that Meji-as was an informant, and Lugo killed Meji-as to protect himself and others from being apprehended as drug dealers. That there was no evidence in the record that Cirilo himself engaged in drug dealing (but was merely a purchaser of drugs) is irrelevant. As the judge properly instructed the jury, a conviction for aiding and abetting does not require that the defendant have engaged in every act constituting the substantive offense, but rather only that some person have done so, and that the defendant have participated voluntarily in the commission of the crime with the requisite intent to violate the law. See United States v. Henderson, 320 F.3d 92, 109-10 (1st Cir.2003); see also United States v. Moran, 312 F.3d 480, 494 (1st Cir.2002).
C. Fact of Sentence Disparity with Lugo
Cirilo argues that the fact that Lugo was sentenced to seventeen years in prison (plus another five years for another crime), while Cirilo received a twenty-seven-year sentence of imprisonment, standing alone establishes unreasonableness. He makes subsidiary arguments that the district court, in discussing the differential between his and Lugo’s sentences, relied on facts not found by a jury or admitted by him, and that this violated his Sixth Amendment right to confront witnesses against him.
*142 A claim that a sentence is unreasonable because it is disproportionate to the sentence of a co-defendant is reviewable post-Booker. See Jiménez-Beltre, 440 F.3d at 517; see also, e.g., United States v. Pierre, 484 F.3d 75, 89-90 (1st Cir.2007); United States v. Vazquez-Rivera, 470 F.3d 443, 449 (1st Cir.2006), cert. denied, — U.S. -, 127 S.Ct. 2951, 168 L.Ed.2d 274 (2007); United States v. Saez, 444 F.3d 15, 17 (1st Cir.2006), cert. denied, — U.S. -, 127 S.Ct. 224, 166 L.Ed.2d 178 (2006).
Our main concern with disproportionate sentences is with disparities between the defendant’s sentence and sentences imposed nationally on defendants in the same circumstances. United States v. Mueffelman, 470 F.3d 33, 40 (1st Cir.2006). Normally, a sentence within the Guidelines range, as Cirilo’s sentence was, likely reflects the national norm. Id. at 40-41. “[A] defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences,” United States v. Gomez-Pabon, 911 F.2d 847, 862 (1st Cir.1990), although concerns could arise if two “identically situated defendants” received different sentences from the same judge, Mueffelman, 470 F.3d at 41.
Lugo and Cirilo were not identically situated. Lugo had cooperated with the government and testified at trial. We have noted many times that “[although a district court may consider disparities among co-defendants in determining a sentence, [a defendant’s] sentence [is not] unreasonable simply because his co-defendant[ ] agreed to help the government in exchange for [a] reduced sentence[ ].” Vázquez-Rivera, 470 F.3d at 449; see also Saez, 444 F.3d at 18; accord United States v. Cain, 487 F.3d 1108 (8th Cir.2007) (upholding as reasonable a sentence twice as long as that received by an allegedly more culpable codefendant where codefendant cooperated and testified for the government); United States v. Ramirez, 221 Fed.Appx. 883, 887-88 (11th Cir.2007) (upholding as reasonable a sixteen-year sentence for a peripheral participant with no criminal history, even though a more central player received a seven-year sentence, where the more central player had assisted the government’s investigation); United States v. Boscarino, 437 F.3d 634 (7th Cir.2006), cert. denied, — U.S.-, 127 S.Ct. 3041, 168 L.Ed.2d 755 (2007) (upholding as reasonable a sentence longer than that imposed on codefendant, even though codefendant’s Guidelines range was higher, where that codefendant had cooperated with the government). Similarly, we have repeatedly found that reduced sentences for those who plead guilty do not render unreasonable longer sentences for less culpable defendants who continue to trial. See United States v. Martínez-Vives, 475 F.3d 48, 55-56 (1st Cir.2007) (upholding as reasonable a longer sentence than that imposed on a more culpable defendant where the more culpable defendant pleaded guilty); United States v. Navedo-Concepción, 450 F.3d 54, 60 (1st Cir.2006) (affirming 151-month sentence for defendant even though leader of the conspiracy who pleaded guilty received a 63-month sentence); cf. United States v. Thurston, 456 F.3d 211, 216, 220 (1st Cir.2006), pet. for cert. filed, 75 U.S.L.W. 3121 (Sept. 14, 2006) (No. 06-378) (requiring a minimum sentence of three years for defendant even though his cohort, who pled guilty, received only probation). “[W]here the defendant’s own sentence has been justified and the basis for a co-defendant’s lesser sentence is set forth or is apparent, no more precise calibration of the difference between them is customarily feasible, let alone required.” Mueffelman, 470 F.3d at 41.
*143 D. Explanation of Reasons for Sentencing Disparity
Cirilo argues that the district court did not adequately consider the sentencing factors laid out in 18 U.S.C. § 8558(a).[101] Cirilo’s argument is focused on the district court’s explanation of its reasons for sentencing him to twenty-seven years’ imprisonment. See Jiménez-Beltre, 440 F.3d at 519; see also 18 U.S.C. § 3553(c).
In Jiménez-Beltre, this court emphasized the importance of having a reasoned explanation of a district court’s decision to impose a particular sentence. 440 F.3d at 519; see also United States v. García-Carrasquillo, 483 F.3d 124, 132 (1st Cir. 2007) (“An important prerequisite to our reasonableness analysis is the district court’s reasoned explanation for the sentence imposed.... ”); Vázquez-Rivera, 470 F.3d at 448.
The district court adequately explained its reasons for imposing a twenty-seven-year sentence here. The court discussed in detail the seriousness of the substantive offense and noted that because the crime was so serious, it was disinclined to sen-fence Cirilo below the Guidelines range.[102] It addressed the sentencing disparity by emphasizing Lugo’s cooperation,[103] and it noted that Lugo had been sentenced to a longer term than the government had in fact requested. The court also explained its decision to sentence Cirilo at the low end of the Guidelines range; The court noted that Cirilo had thought about his behavior, had acknowledged the seriousness of the offense, and seemed to be repentant. In addition, the court discussed its belief that Cirilo was using his time in custody well and could become a useful citizen.[104] The district court did consider a range of factors, and in weighing them, it did not reach an inherently unreasonable result. See, e.g., United States v. Shelton, 490 F.3d 74, 80 (1st Cir.2007), cert. denied, — U.S.-, 128 S.Ct. 212, — L.Ed.2d -, 2007 WL 2003892 (2007) (No. 07-5041) (upholding as reasonable a sentence at the bottom of the applicable Guidelines range despite defendant’s diminished capacity and tragic history); Ramirez, 221 Fed.Appx. at 888 (sentencing minor peripheral participant *144 with no criminal history to bottom of Guidelines range is not “out of the ‘range of reasonable sentences from which the district court may choose’ ” (quoting United States v. Talley, 431 F.3d 784, 788 (11th Cir.2005))).
The majority argues that the explanation given by the sentencing judge is inadequate as to why he did not further reduce defendant’s sentence in light of the sentence Lugo obtained. Like my colleagues, I am concerned that Lugo may have received too lenient a sentence. Unlike my colleagues, I do not consider that this provides a basis for requiring further explanation than already given for not further reducing defendant’s sentence. It is self-evident that one lenient sentence to a pleading and cooperating co-defendant cannot be permitted to create a downward spiral in sentences. Such a spiral itself would undermine public trust and confidence, as well as the interest in national uniformity in sentencing. Cirilo was fairly sentenced at the low end of the Guidelines range, and the court explained its reasons for going no lower. The offense here is very serious: an undercover agent and father of a young family was murdered while he pleaded for his life. In light of that seriousness, the leniency already shown, and the explanation given, I doubt whether there is even a “colorable argument that the sentence is unreasonably severe.” United States v. Gammicchia, 498 F.3d 467, 469 (7th Cir.2007).
I do not begrudge my colleagues their desire for a fuller explanation; I just disagree that one is required.

. Mangual and Ramirez were convicted on all three counts and were sentenced to life in prison.

. Cirilo also attempts to characterize his claim as a due process claim. He briefly remarks that the district court based its determination that Cirilo was a minor participant solely on the fact that he was convicted of aiding and abetting, rather than on the under *139 lying facts of the case, and that this violated his due process rights. This argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) ("[Ilssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.”).
In any event, the district court considered the facts of the case and there was no due process violation here. The court's statement that Cirilo was convicted of aiding and abetting and therefore was “equally culpable” seems to have come in response to an attack on the strength of Cirilo’s conviction, not as a justification for denying Cirilo’s request to consider him a minimal participant. Indeed, the court did not hold Cirilo equally culpable, and instead found him to be less culpable than his co-defendants and therefore entitled to a two-level reduction.

. The Guidelines also provide for a three-level reduction when a defendant’s role falls between minor and minimal participation. U.S.S.G. § 3B1.2. Cirilo has not argued that he was entitled to a three-level reduction.

. Cirilo also — very briefly' — makes a more generalized attack on the district court’s finding that he was a minor, but not minimal, participant. He notes that he did not heed Lugo's call to beat up Mejias, that he did not urge others to participate in the murder, that he was acquitted of the carjacking counts, and that he was uninvolved in the drug transactions taking place at El Ideal. Although there was no evidence that Cirilo sold drugs, there was evidence in the record that he bought drugs from Chispo and that he used drugs provided by Lugo after Mejias had initially been shot.
Cirilo also equates the weight of the evidence against him with his degree of participation in the crime. These simply are not the same.

. Cirilo mentions his "success in prison” as a factor that should have been considered by the court. This argument goes nowhere.
He also makes an incoherent Confrontation Clause claim. As Cirilo concedes, the Sixth Amendment confrontation right does not attach at sentencing. United States v. Rodriguez, 336 F.3d 67, 71 (1st Cir.2003); see also United States v. Luciano, 414 F.3d 174, 179 (1st Cir.2005). In a variation on a theme, Cirilo argues that his case “warrants ... special prophylaxis” because the evidence against him was thin and Lugo testified that Cirilo was innocent. See United States v. Tariff, 969 F.2d 1283, 1287 (1st Cir.1992). We reject this argument. See Mangual-Corchado, 139 F.3d at 46 n. 26 (discussing the import of Lugo’s testimony regarding Cirilo’s knowledge).

. "I considered that crime a very serious and heinous crime, a man begging for his life, had a baby of four months; he was shot in the back, in the abdomen, and then he’s shot in the head.... If there's a more serious crime than that, let me know.”

. "At this point, let me say that Defendant Lugo Sanchez was the person who knocked at the Government’s door first, and that’s why he made a deal_[B]ecause of his testimony, these other defendants were convicted.... So that extensive cooperation and his testimony at trial warranted that the Court agreed to the Government's Plea Agreement.”

. "I think that you are on the right path, and that’s why I’m giving you the lower end.... I notice you have received some awards, and you have learned English.... So that speaks highly of you. I hope that I am not wrong when I predict that you will be a useful citizen and that you will not let your family, nor the Court down when you come back.”